IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MICHAEL W. DECKER, WINCHESTER ACCOUNTING, LLC ) ) ) Appellants, ) ) ) v. ) ) W. STEPHEN SCOTT, TRUSTEE FOR ) MICHAEL W. DECKER, ) ) Appellee. ) | Civil Action No. 5:20-cv-00071<br><br>By:  Elizabeth K. Dillon<br>       United States District Judge |

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION
Case Nos. BK 17-50297, AP 19-05006

**MEMORANDUM OPINION**

Michael Decker and Winchester Accounting, LLC, appeal the bankruptcy court's order on cross-motions for summary judgment that shareholder distributions in the amount of $98,500.00 were property of the bankruptcy estate. For the following reasons, the bankruptcy court's order, dated September 30, 2020, will be affirmed.

I.  BACKGROUND

**A.  Decker's Accounting Practice**

Decker is a certified public accountant. On March 30, 2017, Decker filed a voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code. Prior to the petition date, Decker conducted an accounting practice in Winchester, Virginia, through Winchester Accounting and Consulting, Inc. (WAC). Debtor was the sole shareholder of stock in WAC. When Decker filed

for bankruptcy, the stock became part of his bankruptcy estate. After filing for bankruptcy, Decker continued to operate his solo accounting practice through WAC.

In early August 2017, the Trustee filed a motion to sell the capital stock in WAC. At a hearing on this motion on August 16, 2017, the court orally instructed Decker to "confer with the Trustee before using any funds so the Trustee could review whether the expenditures were ordinary and necessary business expenses or profits owing to the shareholder (the estate)." (Mem. Op. at 6, Joint App'x (JA) 627.) The Trustee later abandoned his motion to sell capital stock while the underlying adversary proceeding was pending.

On August 17, 2017, Decker formed Winchester Accounting, LLC, and began operating his accounting practice through that company. Decker is the sole member and manager of Winchester Accounting. Decker transferred assets held by WAC, including funds in the WAC bank account, to Winchester Accounting, and began operating Winchester Accounting in the same location where WAC operated.

The Trustee filed an adversary proceeding seeking to recover post-petition payments of income to Decker, which the Trustee asserts to have diminished the value of the stock of WAC. Decker argues that his post-petition income was derived from his post-petition personal and professional services and is not part of the bankruptcy estate.

**B. Bankruptcy Court Opinion**

The bankruptcy court issued a 45-page memorandum opinion on September 30, 2020. (Dkt. No. 1-2); *see In re Decker*, 623 B.R. 417 (Bankr. W.D. Va. 2020). The court explained that the motions for summary judgment required the court to answer two questions:

- If all of the stock of a personal services S Corporation is owned by one individual who filed a chapter 7 bankruptcy, are all funds held by the S Corporation "earnings from services performed by an

- individual debtor after the commencement of the case," regardless of when the services were performed?

- If all the shares of stock of an S Corporation are property of the estate, are shareholder distributions made postpetition property of the estate as "proceeds, product, offspring, rents, or profits" from the stock?

623 B.R. at 422. The parties stipulated to numerous facts, and the court determined that the material facts are not in dispute. *Id.* at 424.

### 1. Debtors' motion for summary judgment

*First*, the court reasoned that bankruptcy code section 541(a)(6) does not exclude earnings from services performed prior to the petition date. This section contains an exception from property of the estate for "proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The court explained that there is "an obvious temporal limitation," Dkt. No. 1-2 at 16, such that the earnings exception "only applies to the extent the debtor performed the services postpetition; to the extent the earnings are attributable to something other than a debtor's performance postpetition, the earnings are not excluded." (*Id.* at 15.)

*Second,* the court explained that section 541(a)(6) does not exclude earnings from services performed prior to the petition date even if the services were performed by a shareholder of an S Corporation. Again, what matters is the timing of the performance of the services that gave rise to the earnings.

*Third*, the transfers the Trustee seeks to recover contain earnings from services performed prior to the commencement of the bankruptcy case. The parties agree that WAC had cash on its general ledger and in its bank account as of the petition date. Defendants also agree that WAC

had accounts receivable as of the petition date.  The court held, as a matter of law, that funds received by, or held by, WAC attributed to earnings from services performed prior to the commencement of the case and transferred to Decker or Winchester Accounting after the petition, are not "earnings from services performed by an individual debtor after the commencement of the case."

Next, the court considered whether there were amounts transferred to Decker or Winchester Accounting from services performed prior to the petition date.  The court found this to be undisputed.  As of the petition date, WAC had in existence earnings of at least $56,937.  This was not generated from services performed after the petition.

The debtor also admits that WAC had accounts receivable of $47,055 as of the petition date.  These also represents services performed prior to the petition.

Shortly before filing for bankruptcy in March 2017, WAC purchased a new Ford truck in February 2017.  WAC reported the asset (the truck) and the liability (the loan) on its balance sheet.  WAC also reported the tax-deductible depreciation for the truck ($61,708.48) as an offset to the retained earnings as of the petition date.  The court reasoned, however, that although the tax deduction for depreciation is disclosed as an expense to offset the retained earnings on the WAC general ledger, the actual earnings as of the petition date were not depleted by this figure.  And no one disputes that WAC's bank account balance as of the petition date, March 30, 2017, was $1,064.69.

Thus, in sum, the amounts earned prior to the petition and held by WAC as of the petition date ($56,937), accounts receivable ($47,055), and cash in the bank ($1,064.69) could not be attributed to services not yet performed.

Finally, the parties agree that when Decker filed his bankruptcy petition, his stock in WAC became property of his bankruptcy estate. Thus, the Trustee can recover the value of the stock. The Trustee alleged that the debtor caused WAC to transfer to the debtor and Winchester Accounting the proceeds, product, offspring, or profits of the stock. Debtor and Winchester Accounting argue that the Trustee has no standing to recover these transfers because they are earnings from personal services performed by an individual debtor after the petition, but this is based on an overstatement of the earnings exception, discussed above.

For these reasons, the court denied the debtor's motion for summary judgment.

**2. Trustee's motion for summary judgment**

The Trustee sought to recover shareholder distributions WAC made to Decker after the petition date. As the court explained above, the amounts transferred to Decker included amounts that were earnings from services performed prior to the petition. This means that the transfers were not excluded, and the court may grant judgment to the Trustee. The court proceeded to determine the amount of the judgment. Defendants failed to identify any factual issue for trial, and the Trustee identified uncontested facts and records.

The court found that there was no reasonable dispute that transfers of $32,500 and $16,000 ($48,500 total) were shareholder distributions transferred after the petition date.

> As explained earlier, there is no dispute that as of the petition date, at least $56,937 were earnings in existence plus cash in the bank of $1,064.69 and accounts receivable of $47,055. Indeed, $7,675 was deposited one day after the petition, and in the months after that the corporation received deposits in excess of billings, showing that accounts receivable were collected after the petition. All of this shows no reasonable dispute that the shareholder distributions of $48,500 are "proceeds, product, offspring, rents, or profits" of the stock and as such are property of the estate under section 541(a)(6) and not excluded from the estate as earnings from services performed after the commencement of the case.

5

(Dkt. No. 1-2 at 33.)

The Trustee also asserted that profits owed to the shareholder were transferred to Decker after the petition and disguised as salary. This was done in two ways. First, a lump sum shareholder distribution of $50,000 that was later recharacterized as salary. Second, through amounts labeled as salary which exceed what Decker disclosed in his bankruptcy schedules as salary. The court agreed with the first contention, but not the second.

The court found that the "evidence is sufficiently one-sided in support of the Trustee's claim that the disbursement of $50,000 to Mr. Decker on August 17, 2017, was a shareholder distribution recharacterized as salary." (Dkt. No. 1-2 at 43.) Because of the "internal inconsistencies in the amounts reported as officer salary, the failure to fully account for the amounts labeled as officer salary in August 2017, and the failure to disburse the salary through the payroll account, even providing reasonable inferences to the non-moving party, the record does not show that a juror could reasonably conclude the lump sum payment of $50,000 to Mr. Decker in August 2017 was salary at the time it was disbursed." (*Id.*)

### 3. Conclusion

The court concluded as follows:

> The uncontested facts and records reflect that at least $56,937 plus $47,055 plus $1,064.69 were earnings from services prior to the petition. As described herein, the amounts attributable to retained earnings, accounts receivable, and cash as of the petition date are not excluded under section 541(a)(6). When the stock is property of the estate, and the corporation has earnings from services prior to the petition, the postpetition disbursements of shareholder distributions or dividends are property of the estate under section 541(a)(6) and may be recovered by the Trustee. In this case, the evidence shows that amounts attributable to services performed prior to the petition were paid to Mr. Decker postpetition as shareholder distributions.

> The Court holds the amounts transferred as shareholder distributions are profits of the stock and are property of the estate which the Trustee may recover.
>
> The defendants contend that the Trustee may not recover any amounts because the amounts transferred to Mr. Decker or Winchester Accounting were earnings from services performed after the petition.  As shown above, at least $105,056.69 was disbursed as shareholder distributions, the amount of $48,500 was disbursed as shareholder distributions, and the amount of $50,000 was a shareholder distribution when it was made and was later recharacterized as salary.  These distributions ($48,500 plus $50,000) are property of the estate and may be recovered by the Trustee.  The Court holds as a matter of law that shareholder distributions were made in the amount of $98,500 after the petition date and these distributions were not made from earnings from services performed by an individual debtor after the petition.
>
> Based on the foregoing, the Trustee is entitled to judgment as a matter of law as to $98,500 transferred to Mr. Decker.

(Dkt. No. 1-2 at 44–45.)  The court issued an order denying Decker's motion for summary judgment, granting in part and denying in part the Trustee's motion for summary judgment, and avoiding the transfer of $98,500 to Decker's estate.

## II.  DISCUSSION

**A.  Standard of Review**

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding.  *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts").  The district court reviews the bankruptcy judge's findings of fact under the "clear error" standard.  *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014).  In contrast, the bankruptcy court's conclusions of law are subject to de novo review.  *Id.*  The district court "may affirm, modify, or reverse a

7

bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).

**B. Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure applies to summary judgment in bankruptcy proceedings. Fed. R. Bankr. P. 7056. Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* When determining if a genuine issue of material fact has been raised, the court must construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).

**C. Earnings Exception**

When a bankruptcy petition is filed, a bankruptcy estate is created. 11 U.S.C. § 541(a). The scope of the estate is broad. It includes "all legal or equitable interests of the debtor in property as of the commencement of the estate." 11 U.S.C. § 541(a)(1). The estate further includes "[p]roceeds, product, offspring, rents, and profits of or from property of the estate," subject to the limitation at issue in this case: "except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

> Section 541 embodies the essence of the Bankruptcy Code. It creates the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. Property belonging to the estate is protected from the piecemeal reach of creditors by the automatic stay of section 362. It is this central aggregation of property that promotes the effectuation of the

8

> fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution among similarly situated creditors, according to the priorities set forth within the Code.

*In re Moyer*, 421 B.R. 587, 590 (Bankr. S.D. Ga. 2007) (quoting 5 Collier on Bankruptcy ¶ 541.01). The "bright line the Bankruptcy Code draws between pre- and post-bankruptcy filing events" helps to effectuate the dual purposes of "providing protection for the creditors of the insolvent debtor" and "permitting the debtor to carry on and rebuild his life, that is, to make a 'fresh start.'" *In re Andrews*, 80 F.3d 906, 909–10 (4th Cir. 1996).

The earnings exception has been construed "very narrowly" and applies "only to affirmative services performed personally by an individual debtor, such as the money earned by a lawyer in a solo practice from assisting his clients or an individual dentist examining his patients." *In re Lockbaum*, No. 09 B 05704, 2010 WL 3522354, at *2 (Bankr. N.D. Ill. Sept. 2, 2010) (citing *In re Prince*, 85 F.3d 314 (7th Cir. 1996)); *see also Longaker v. Boston Scientific Corp.*, 715 F.3d 658, 662 (8th Cir. 2013) ("Courts construe § 541(a)(6)'s earning exception narrowly and apply it only to payments a debtor receives post-petition if the money is attributable to post-petition services actually rendered by the debtor."). This is counter to the expansive nature of the bankruptcy estate. *See, e.g.*, *In re Baltimore Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007) (recognizing the "broad scope of the reorganization estate") (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205–06 (1983)).

To invoke the earnings exception, the debtor bears the burden of coming forward and showing that (1) she is an individual; (2) who performed postpetition services; (3) that generated earnings. *In re Walhof Properties, LLC*, 613 B.R. 479, 482 (Bankr. M.D. Fla. 2020) (citing *In re Cooley*, 87 B.R. 432, 441 (Bankr. S.D. Tex. 1988)). Assuming the debtor makes the required

9

showing, the burden then shifts to the opposing party to show that "earnings" are really proceeds or profits derived from the property of the estate. *Id.*

**D. The Bankruptcy Court Correctly Ruled That the Shareholder Distributions Were Not Subject to the Earnings Exception**

On appeal, Decker argues that evidence demonstrates that the post-petition income paid to him was derived from his post-petition professional services. According to Decker, there is no evidence in the record to show that the revenues came from anything but his post-petition services, as neither the Trustee nor the bankruptcy court presented or outlined any evidence to trace the distributions Decker received from any other source.

As outlined above, Decker filed for bankruptcy on March 31, 2017. He continued operating his accounting practice, WAC, until August 17, 2017, when he formed a new accounting practice, Winchester Accounting, LLC. Decker was the sole shareholder of WAC, and he is the sole member of Winchester Accounting. Decker transferred assets held by WAC, including funds in the WAC bank account, to Winchester Accounting, and began operating Winchester Accounting in the same location where WAC operated. It is not disputed in this matter that Decker's shares of stock in WAC became property of the bankruptcy estate upon his filing the petition. Put another way, because Decker was WAC's sole shareholder until the petition date, the bankruptcy estate became the sole shareholder of WAC on the petition date. Decker disputes the bankruptcy court's finding that the shareholder distributions were not earnings from services performed by the debtor after the commencement of the case.

Importantly, it is Decker's burden to come forward with evidence demonstrating that he generated earnings through post-petition services. Otherwise, assets are presumed to belong to the estate. It appears to the court that Decker is trying to invert this burden. He argues that the Trustee has failed to produce evidence that the revenues *did not* come from post-petition

10

services. Yet Decker has failed to demonstrate, as is his responsibility, that the revenues were derived from post-petition services.

As the bankruptcy court reasoned in denying Decker's motion for summary judgment, the "amounts earned prior to the petition and held by WAC as of the petition date ($56,937), plus accounts receivable ($47,055) and cash in the bank ($1,064.69) could not reasonably, or possibly, be attributed to services that had not yet been performed. The evidence does not show otherwise." *Decker*, 623 B.R. at 432. Thus, Decker was not entitled to summary judgment because he could not demonstrate, as a matter of law, that the property transferred by Decker was post-petition earnings.

Decker disputes the amounts calculated by the bankruptcy court, invoking various accounting principles. (App. Br. 12–21, Dkt. No. 5.) For example, Decker argues that the court erred in concluding that WAC collected $47,055 in pre-petition accounts receivable. Decker complains that the court did not conduct a tracing exercise to show that any of the post-petition distributions received by Decker came from any pre-petition accounts receivable that were collected by WAC post-petition. It was not necessary for the bankruptcy court to "trace" the amounts from pre-petition accounts receivable to post-petition distributions. Instead, as the court explained, WAC's post-petition billing summaries between March 30, 2017, and August 17, 2017, are less than the amounts received by WAC during that period. *Decker*, 623 B.R. at 425. (*See* JA 363.) Thus, the excess amount can be attributed to pre-petition services by inference and is correctly considered property of the bankruptcy estate.

Decker also argues that retained earnings of $56,937 were not the source of post-petition payments. The bankruptcy court arrived at this amount by subtracting shareholder distributions between January 1, 2017, and March 6, 2017, ($9,850) from retained earnings of $66,787 as of

11

December 31, 2016. *Decker*, 623 B.R. at 431–32.  Decker argues that, as reflected on its spreadsheet, WAC had negative equity because it had negative net income.  (WAC Balance Sheet, JA 421.)  In addition to "Retained Earnings," the other components of WAC's "Total Liabilities & Equity" calculation are "Shareholder Distributions" and "Net Income."  (*Id.*)  The bankruptcy court acknowledged that "WAC's records show the retained earnings as negative $40,730.  Once the depreciation is credited to WAC's reported retained earnings, the result is a positive number.  This clearly shows that the retained earnings were available to pay shareholder dividends and that the stock had a value of at least the value of the retained earnings."  *Decker*, 623 B.R. at 432.[1]  Retained earnings reflect the shareholder's equity, or earnings it kept from the previous year.  WAC's operating expenses reduced the cash available (down to around $1,000), but they do not reduce retained earnings, which remain unchanged.  Put another way, retained earnings remain steady on the books, but net income ebbs and flows during the year.  When the year closes, the shareholder includes net income in their tax return as ordinary income.  (Schedule K-1, JA 290.)  To the extent not distributed to the shareholder, this amount is recalculated as retained earnings for the following year.  The bankruptcy court's analysis is supported by the record.

Again, it is undisputed that when Decker filed for bankruptcy, the bankruptcy estate became the sole shareholder of WAC and is entitled to any shareholder distributions therefrom.  The shareholder distribution in this case is "sufficiently rooted in the pre-bankruptcy past" that the payment constitutes property of the estate under § 541(a).  *See in re Shearin*, 224 F.3d 346, 351 (4th Cir. 2000) (finding that year-end distributions to a debtor who was a partner in a law

---

[1] The depreciation was for the purchase of a new Ford truck in February 2017.  WAC "reported all of the tax-deductible depreciation for the truck ($61,708.48) as an offset to the retained earnings as of the petition date."  *Decker*, 623 B.R. at 432.

12

firm, and the value of his capital account on the date he filed for bankruptcy, were both recoverable by the trustee as property of the estate); *In re Jokiel*, 447 B.R. 868, 872 (Bankr. N.D. Ill. 2011). Therefore, the bankruptcy court did not err in granting summary judgment to the Trustee and denying summary judgment to Decker.

**E. Remaining Arguments**

Decker argues that the bankruptcy court ignored his arguments concerning the earnings exception and, instead, made a decision *sua sponte* based on flawed theories pertaining to "retained earnings, "accounts receivable," and "cash on hand." *See Carter v. Fleming*, 879 F.3d 132, 140–41 (4th Cir. 2018) (a court "may grant summary judgment *sua sponte* but only if the notice to the losing party is sufficient to provide an adequate opportunity to demonstrate a genuine issue of material fact"). The court clearly analyzed those concepts in the context of deciding whether funds received post-petition were covered by the earnings exception. Therefore, the court does not consider the grant of summary judgment to be without notice. Even if the bankruptcy court's ruling could be considered *sua sponte*, courts are "widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 881 (S.D.W. Va. 2018). Here, the material facts were stipulated to by the parties, and Decker prepared and stipulated to all the business records upon which the court relied. Decker does not identify any additional evidence he could have proffered that would have affected the court's analysis of the earnings exception.

Decker also argues that the bankruptcy court failed to view the evidence in the light most favorable to him as the non-moving party when granting summary judgment to the Trustee. On

13

the court's review of the record, this is not accurate, especially because Decker stipulated to material facts.

Decker insists, however, that the bankruptcy court erred by not relying on the contents of two affidavits filed by Decker, one by himself and one by his assistant, Brittany Young. (JA 492–95.) These affidavits, unrebutted by the Trustee at summary judgment, should have resulted in summary judgment in favor of Decker, he argues. The court has reviewed these affidavits and does not comprehend how they would somehow mandate the entry of summary judgment for Decker. The affidavits do not contradict the bankruptcy court's analysis and distinction between pre- and post-petition activities. Much of the information is also duplicative of the parties' summary-judgment stipulation. (*See* JA 280–84.)

Decker further objects that the bankruptcy court did not "accept" WAC's Balance Sheet in a light most favorable to the non-moving party, but instead "re-engineered WAC's books" to fit a desired finding. (Appellant's Br. 25, Dkt. No. 5.) Decker cites to the court's analysis of retained earnings (Mem. Op. 23), which the court has already explained was supported by the record on summary judgment. Decker complains that the court's analysis conflicts with the requirement to construe evidence in the light most favorable to the nonmoving party, but at this point in the opinion, the bankruptcy court was discussing Decker's motion for summary judgment, not the Trustee's motion. Importantly, the bankruptcy court did not state that the number it arrived at was correct, or that the negative number on WAC's books was incorrect. The court stated only that it was a "positive number," which demonstrates that the bankruptcy estate's stock had value and, as a result, Decker was not entitled to summary judgment.

Finally, Decker argues that the bankruptcy court committed error when it did not distinguish between the assets of WAC and assets of the bankruptcy estate. Decker argued

before the bankruptcy court that the Trustee was seeking to avoid the transfer of assets of WAC and not assets of Decker's bankruptcy estate, i.e., the corporation stock, citing *In re McCurnin*, 590 B.R. 729, 742 (Bankr. E.D. Va. 2018) ("It is well accepted that a filing by an individual who is an owner of a corporation brings into the estate only his ownership interest and not the assets of the corporation."). Decker complains that the court ignored this argument in its analysis.

This argument confuses the issue because, as the court has repeatedly stressed, Decker was the sole shareholder of WAC, so when Decker filed for bankruptcy, the bankruptcy estate became WAC's sole shareholder. The court in *McCurnin* recognized the same principle. *Id.* at 742 ("The shares of stock in Isis are assets of the bankruptcy estates, but the assets of Isis are not, nor have they ever been, property of the Debtors."). The dispute is not over other assets of the corporation.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court's order dated September 30, 2020, will be affirmed. The court will enter an appropriate order.

Entered: September 14, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge